UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRANK WILLIAM BECKENDORF, III | CIVIL ACTION |
| VERSUS | NO: 21-01357 |
| DANIEL FLEISCHMAN, Individually and in his/her official capacity, et al. | SECTION: T (5) |

### ORDER and REASONS

Before the Court is a Motion for Judgment on the Pleadings pursuant to Rule 12(c) filed by Defendants Warrenisha Dutre, Daniel Fleischman, Brian Harris, Kayla Kass, Savannah Manser, Lt. Schmidt, Jan Smith, and Randy Smith. R. Doc. 71. Plaintiff Frank William Beckendorf, III has filed a response styled as an objection to the motion. R. Doc. 74. Defendants filed a reply in support of the Motion. R. Doc. 82. For the reasons set forth below, the Court will grant the Motion for Judgment on the Pleadings in favor of Defendants.[1]

BACKGROUND

Plaintiff is a former state prisoner who filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983 against numerous defendants. R. Doc. 7. In his lawsuit, Plaintiff claimed that the medical-Defendants were deliberately indifferent to his medical needs under 42 U.S.C § 1983. Those defendants, however, were dismissed for failure to state a claim on which relief could be granted. *See* R. Docs. 38 and 44 (adopting the report and recommendation of the Magistrate Judge). Plaintiff also asserted that, while he was a pretrial detainee, the deputy-

---

[1] Plaintiff filed an untimely sur-reply, R. Doc. 97, without first seeking leave of court. Accordingly, the pleading is not properly before the Court and will not be considered.

1

Defendants, specifically St. Tammany Parish Sheriff Randy Smith, Daniel Fleischman, Kayla Kass, Brian Harris, Savannah Manser, Warrenisha Dutre, Lt. Schmidt, and Jan Smith, each in their official and individual capacities, had violated his rights under the 14th Amendment by, *inter alia*, impeding his sleep by leaving lights on, disregarding COVID-19 guidelines, and providing no outdoor recreation. The deputy-Defendants were originally dismissed pursuant to Fed. R. Civ. P. 41(b) on the basis that Plaintiff had failed to provide the Court with his current address despite being aware of his obligation to do so, and mail sent to him at his address of record was returned as undeliverable. R. Doc. 50 and 51. However, the Court on reconsideration later vacated that order and judgment, R. Doc. 55, allowing Plaintiff's suit against the deputy-Defendants to proceed. Defendants then filed this Motion for Judgment on the Pleadings. R. Doc. 71.

In his Complaint, R. Doc. 7, Plaintiff asserts, while he was a pretrial detainee in the St, Tammany Parish Jail, (1) that deputies routinely left the lights on well past midnight and often times all night long making it near impossible to sleep during normal night hours (noting elsewhere that one deputy, Kayla Kass, was "notorious for leaving the lights on all night because she was especially hostile towards detainees," R. Doc. 7, p. 6); (2) that outdoor recreation is not provided for months at a time; (3) that deputies disregarded CDC guidelines for COVID-19 and regularly entered the dorm with no mask; (4) that plaintiff was housed in a dormitory where access to the bathroom area was limited for individual inmates' unruly behavior and that inmates were informed that the gate to the bathroom would be closed for two-hour intervals, and open for fifteen-minute intervals, as long as inmates continued to be unruly or too many of the inmates entered the bathroom/water area during night hours; (5) that plaintiff was placed in a holding cell for seven days; (6) that he was not provided with bedding in the holding cell; (7) that Defendants improperly

2

cited to the Jail Handbook; and (8) that Plaintiff was verbally threatened with disciplinary action, criminal charges, extended lockdown, and loss of due process and liberty if he continued to utilize the grievance procedure. Plaintiff asserted in his Complaint that he is "under imminent danger of serious physical injury," though this assertion is directed to both the previously-dismissed medical treatment claims and the claims against the deputy-Defendants.[2] *See* R. Doc. 7, p. 7. Plaintiff sought injunctive relief, court costs and attorney fees, "all monetary settlement allowed by law," habeas corpus relief, and $1,962,000 in damages. R. Doc. 7, p. 6.

LAW and ANALYSIS

Rule 12 of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed...a party may move for judgment on the pleadings."[3] The purpose of a Rule 12(c) motion is to "dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Mendy Bros., LLC v. Bank of N.Y. Mellon*, Civ. A. No. 16-6406, 2017 WL 2558891 (E.D. La. June 13, 2017). The Court can dismiss a claim under Rule 12(c) when the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* (citing *Collins v. A.B.C. Marine Towing, L.L.C.*, U.S. Dist. LEXIS 86515, at *6 (E.D. La. June 30, 2015)). The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citation omitted). The court "accepts all well-pleaded facts

---

[2] In his response, for the first time, Plaintiff asserted he suffered sleep deprivation and depression, but he also stated he was being treated for both conditions by the medical team.
[3] Under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

3

as true, viewing them in the light most favorable to the plaintiff." *Id.* The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 570. While a complaint need not contain detailed factual allegations, it does demand more than an unadorned, "the defendant unlawfully harmed me" accusation. *Bartholomew v. Ladreyt*, Civ. A. No. 14-1468, 2015 WL 365525, at *1 (E. D. La. Jan. 27, 2015).

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;
(2) that occurred under color of state law; and
(3) was caused by a state actor.

*Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004)(citation omitted).

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."

4

*Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997)(citation omitted). This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).

Plaintiff has alleged various constitutional violations while he was confined in St. Tammany Parish Jail as a pretrial detainee. A claim challenging "general conditions, practices, rules, or restrictions of pretrial confinement" is considered a conditions-of-confinement claim. *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996)). For a pretrial detainee, like Plaintiff, the unconstitutional condition must "amount to punishment" violating the Due Process Clause's prohibition on punishment prior to conviction. *Sanchez*, 956 F.3d at 791 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). A condition constitutes punishment when there is a complete "absence of any legitimate penological or administrative goal." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009). A plaintiff must point to "a 'rule,' a 'restriction,' an 'identifiable intended condition or practice,' or 'sufficiently extended or pervasive' 'action or omissions' of jail officials - that is not reasonably related to a legitimate government objective ***and*** that caused the constitutional violation." (emphasis added) *Sanchez*, 956 F.3d at 791 (quoting *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011)). To do so, a plaintiff must allege that a constitutional right was violated

5

by "a pervasive pattern of serious deficiencies in providing for [the detainee's] basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights." *Shepherd*, 591 F.3d at 454. Showing a pattern sufficient for a conditions-of-confinement claim "is a heavy burden, one that has rarely been met in our caselaw." *Id*. at 452.

    Plaintiff has failed to carry this burden with regard to any of his claims. First, with regard to the lights being left on overnight, defendant notes in his opposition that he does not object to some lighting but that on occasion, particularly when one deputy was on duty, all the lights were left on. And, for the first time, in his opposition he claims in general that he suffered sleep deprivation and depression for which he notes he was being treated by the medical team. However, the Fifth Circuit has held that 24-hour lighting in jail is not unconstitutional.[4] Furthermore, Plaintiff has failed to allege that the lights were left on by the Defendants in deliberate indifference to his health and safety or that the lights being left on at night affected his health in any significantly adverse way.[5] Indeed, as Defendants point out, illumination logically serves a specific governmental interest in ensuring the security and safety of both inmates and staff.[6] Accordingly,

---

[4] *See Chavarria v. Stacks*, 102 Fed. Appx. 433 (5th Cir. 2004) ("The policy of constant illumination is thus reasonably related to the legitimate penological interest of guard security. Accordingly, the enforcement of the policy does not violate the Eighth Amendment. Because the policy of 24-hour illumination does not violate the Eighth Amendment, Chavarria's complaint about the policy is based upon an indisputably meritless legal theory.").

[5] *Unger v. Taylor*, 2007 U.S. Dist. LEXIS 118802 (E.D. Tx. 2007) ("Even assuming arguendo that Unger has sufficiently alleged that the constant illumination led to sleep deprivation sufficiently serious to be cognizable under the Eighth Amendment, Unger cannot establish a constitutional violation because he cannot show that his sleep deprivation was unnecessary and wanton. Because the constant illumination is pursuant to a legitimate governmental interest, and the lack of sleep was not the result of unnecessary and wanton behavior, this condition of confinement is not a violation of Unger's constitutional rights.")

[6] *Treece v. Andrews*, 2005 U.S. Dist. LEXIS 43597 (W.D. La. 2005) (24-hour lighting constitutional as it related to the obviously legitimate penological interest of security); *Burns v. Smith*, 2009 U.S. Dist. LEXIS 79525 (W.D. La. 2009) (24-hour lighting constitutional based on a

Plaintiff's claim regarding the lights in the jail being left on at night must be dismissed with prejudice for failing to state a claim on which relief may be granted.

Second, Plaintiff's claim that, during his confinement in the parish jail, he was not provided outdoor recreation for months at a time, also fails to meet his burden of proving a constitutional violation. The law is settled that neither prisoners nor pretrial detainees have a constitutional right to outdoor exercise or recreation. *Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (denial of outdoor exercise claim found "meritless because it [was] premised on the erroneous assumption that [the plaintiff] had an absolute right to exercise or recreation."); *Maze v. Hargett*, 200 F.3d 814, 1999 WL 1093469, at *3 (5th Cir. 1999) ("[n]either the Supreme Court nor this court [has] specifically held that prisoners enjoy an absolute right to outdoor exercise"); *see Jones v. Diamond*, 594 F.2d 997, 1012-13 (5th Cir. 1979) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise."). Instead, the courts have consistently held that the opportunity to exercise in or simply move about an inmate's cell meets any minimum

---

legitimate penological interest manifest from the complaint even though defendants did not proffer any rationale for the policy). Furthermore, in the June 14, 2021 response to Plaintiff's grievance regarding the lights being left on in the jail at night, Lt. Schmidt stated as follows:
> The lights going out at night are contingent upon inmates getting in their racks. Too much movement in the dorm creates a security risk that can be alleviated by having the lights on allowing the deputy to make sure nothing dangerous is going on.

R. Doc. 7-1, p. 5.
The Warden's Review Decision dated June 17, 2021 emphasized that policy:
> STPSO Jail Rule Book addresses Lights On/Off on page 7. It clearly states that any exception to the lights out at lockdown, 10:30pm guideline is at the discretion of the supervisor. It also states that after lights are turned off, no loud noises are allowed and that offenders are required to stay in their bunks with the only exception being to use bathroom facilities.
> To maintain the safety and security of the offenders and the jail personnel is a top priority for supervisors. They are allowed to use their discretion as the rule book states….

R. Doc. 7-1, p. 6.

constitutional standards of decency for an inmate who is denied or has limited access to outdoor exercise. *Wilkerson v. Maggio*, 703 F.2d 909, 911-12 (5th Cir. 1983); *accord Green v. Guidry*, No. 19-12052, 2019 WL 5540959, at *5 (E.D. La. Oct. 4, 2019) ("The jurisprudence reflects that even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional."), *R&R adopted by* 2019 WL 5538065, at *1 (E.D. La. Oct. 25, 2019). The courts also maintain that to recover under § 1983 for lack of exercise opportunities, whether indoors or outdoors, a plaintiff must have suffered an adverse physical health injury as a result of the denial of movement. *See Callicutt v. Panola Cnty. Jail*, 200 F.3d 816 (5th Cir. 1999); *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977); *see also Hernandez v. Velasquez*, 522 F.3d 556, 560-61 (5th Cir. 2008) (on motion for summary judgment, assertions of possible muscle atrophy, stiffness, loss of range of motion, and depression insufficient to state a claim that a lack of exercise amounts to "a substantial risk of serious harm" and plaintiff did not "clearly evince" a serious medical need resulting from the denial of exercise). This comports with the general premise that conditions of confinement can rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Therefore, Plaintiff's claim that he was not provided outdoor recreation for lengthy periods of time must be dismissed with prejudice for failing to state a claim on which relief may be granted.

Third, Plaintiff has also failed to carry his burden with regard to his claim that the jail staff failed to follow CDC guidelines for COVID-19, because deputies regularly entered dorms without masks and thus it was impossible for inmates to social distance. However, the Fifth Circuit has held that the "... Eighth Amendment does not enact the CDC guidelines" and a prison's failure to

comply with CDC guidelines "... does not clearly evince a wanton disregard for any serious medical needs." *Valentine v. Collier*, 978 F.3d 154, 164 (5th Cir. 2020)(internal quotation omitted); *see also Young v. Ledet*, No. 20-CV-2165, 2021 WL 799683 at *16 (E.D. La. Jan. 15, 2021), adopted, 2021 WL 795981 (E.D. La. Mar. 2, 2021). Moreover, as Defendants point out, courts have held that "a prisoner's generalized fear of contracting COVID-19 is not sufficient to state a claim for relief." *Wilson v. Dallas Cnty. Jail*, No. 3:20-CV-02792-C (BT), 2022 WL 1176749, at *2 (N.D. Tex. Mar. 16, 2022), report and recommendation adopted, No. 3:20-CV-2792-C, 2022 WL 1173802 (N.D. Tex. Apr. 20, 2022) ("[Plaintiff's conditions of confinement claim, rooted only in a generalized fear of catching COVID-19, is meritless.")(citation omitted). The Court finds Plaintiff has failed to state an actionable claim of a constitutional violation; therefore, this claim, too, must be dismissed with prejudice.

Fourth, Plaintiff fails to carry his burden regarding his claim that, during his confinement at the parish jail, access to the restroom was routinely restricted for two-hour intervals with only 15-minute breaks. Of course, the continued refusal to provide an inmate necessary access to a bathroom for a significant period of time could rise to the level of a constitutional deprivation, but a single or temporary deprivation of toilet access does not generally give rise to an actionable constitutional claim.[7] Further, the inmate still must show that the denial of access involved

---

[7] *Tyree v. Brooks*, 2009 WL 2232455, at *2 (W.D. Va. July 24, 2009) (holding that denial of bathroom privileges for just over five hours while being transported between prisons is not a denial of a minimal measure of life's necessities."); *Smith v. Boyd*, 2012 WL 3230646, at *9 (M.D. Ala. July 5, 2012) (holding the Eighth Amendment not violated when an inmate was denied access to restroom for several hours while a search was being conducted, inasmuch as no injury was suffered); *Rouse v. Caruso*, 2011 WL 918327, at *12 (E.D. Mich. Feb. 18, 2011) (court found that denial of bathroom privileges for six to eight hours did not violate Eighth Amendment); *Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 677 (N.D. Ill. 2009) (denial of bathroom break during three to five hour period of cell shakedown did not state Eighth

indifference to a substantial risk of serious harm to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In *Vacca v. Scott*, 119 F. App'x 678 (5th Cir. 2005), the Fifth Circuit considered the repeated denial of an inmate's request for access to a bathroom that resulted in the inmate soiling himself and his clothing. The court found no constitutional violation or claim stated under § 1983 because the inmate did not allege an actual "risk to his present and future health." *Vacca*, 119 F. App'x at 678. Here, Plaintiff merely alleges his access to a bathroom was limited to fifteen minutes at two-hour intervals, due to the unruly behavior on the part of some inmates. He does not allege that he was forced to soil himself. *See, e.g., Mendoza v. Atwell*, No. 20-cv-42, 2020 WL 8514099, at *4 (S.D. Tex. Sep. 21, 2020) (defendant's actions were reprehensible in denying plaintiff access to the restroom, which resulted in plaintiff soiling himself, but plaintiff failed to allege an Eighth Amendment violation in the single incident where there were no allegations of physical injury). At most Plaintiff alleges discomfort based on the restrictions imposed. Moreover, he fails to allege or point to any evidence that any of the defendants acted with deliberate indifference. *See Jarrell v. Seal*, Civ. A. No. 03-2737, 2004 WL 241712 (E.D. La. Feb. 10, 2004), aff'd 110 Fed. Appx. 455 (5th Cir.). Indeed, in his Complaint, Plaintiff notes that the reason for the limited intervals was the unruly behavior of some inmates and that the restrictions would only be imposed "as long as inmates continued to be unruly or too many of the inmates entered the bathroom/water area simultaneously during the night hours." R. Doc. 7, p. 5. Thus, he fails to allege a constitutional violation.

---

Amendment claim); *Owens v. Padilla*, 2008 WL 3916068, at *4 (N.D. Cal. Aug. 22, 2008) (confinement in prison barbershop for six hours without access to bathroom did not state Eighth Amendment claim); *Trevino v. Jones*, 2007 WL 710213, at *8 (N.D. Okla. Mar. 6, 2007) (use of restrooms only twice during eight-hour period does not constitute cruel and unusual punishment).

Fifth and sixth, Plaintiff similarly fails to show a constitutional violation on the basis that he spent seven days in a holding cell during the confinement at issue and was not provided with bedding during that period. It is well-settled that such a brief confinement in a holding cell without bedding is insufficient to rise to the level of a constitutional violation.[8] "The Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted). However, "the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences." *Hill*, 202 U.S. Dist. LEXIS at *3. Such "judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979); *Ruiz v. El Paso Processing Center*, 299 F. App'x 369, 371 (5th Cir. 2008); *Maddox v. Gusman*, Civ. Action No. 14-2435, 2015 U.S. Dist. LEXIS 34318, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015)). There is no indication from the Complaint that Plaintiff was kept in a holding cell without bedding as a form of punishment. While the physical conditions alleged by Plaintiff may be unpleasant, they amount

---

[8] *Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. 2020) (detainee's 18-day confinement without a bed or mattress in the St. Tammany Parish Jail's holding cells was too brief a period to support a constitutional claim), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La. 2020); *Terry v. Smith*, 2020 U.S. Dist. LEXIS 248351 (E.D. La. 2020)(detainee's 17-day confinement in the holding cell was insufficient to rise to the level of a constitutional violation), adopted, 2021 U.S. Dist. LEXIS 12680; *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La. 2018) (detainee's 15-day confinement without a mattress in the St. Tammany Parish Jail's holding cells was too brief a period to support a constitutional claim), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La. 2018). *McClay v. Gusman*, 2012 U.S. Dist. LEXIS 114131 (E.D. La. 2012) (17 days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442 (N.D. Miss. 2011)(16 days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357 (N.D. Miss. 2011).

to nothing more than *de minimis* inconveniences that do not constitute "punishment" or otherwise rise to the level of constitutional violations. Thus, these claims must be dismissed with prejudice for failure to state a constitutional violation.

In his seventh and eighth claims, Plaintiff asserts that Warden Fleischman is liable for alleged damages due to his citations to the jail handbook in the review of several grievances and thus superseded the law. However, the Complaint does not specify what laws the warden has failed to comply with, nor does it reveal any punitive intent on the part of the warden. He also alleges that he was threatened by the warden and others. However, as Defendants point out, the Fifth Circuit has consistently barred Section 1983 claims premised on allegations of verbal abuse or that an officer issued a verbal threat, holding that, without more, such a threat does not support a claim of a constitutional violation. *See, e.g., Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (An inmate's claims of verbal insults, threats and derogatory remarks are not cognizable under § 1983). Because Plaintiff does not allege that any of the threats were carried out, they constitute verbal abuse, which does not give rise to a cause of action under Section 1983. *See, e.g., Burdette v. Miss. Dep't of Corr.*, 2024 WL 288995, * 2 (N.D. Miss. Jan. 25, 2024) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993), *Siglar v. Hightower*, 112 F.3d 191(5th Cir. 1997)). Thus, these claims must be dismissed as well for failure to assert a constitutional violation for which relief could be granted.

CONCLUSION

Although Plaintiff has suggested that he be allowed to amend his pleadings, mainly to identify with more particularity the officers involved in the various allegations, the Court has found that none of his claims rises to the level of a constitutional violation, regardless of who may have

committed them, and therefore any amendment would be futile. In sum, plaintiff has failed to assert sufficient facts supporting any claim on which Section 1983 relief could be granted.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Judgment on the Pleadings (R. Doc. 71) is GRANTED and Plaintiff's claims are dismissed with prejudice.

New Orleans, Louisiana, this 18th day of March 2025.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE